**ALFA LAVAL SEPARATION, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee,**

and

**Westfalia Separators, Inc., Defendant–Appellee.**

No. 98–5087.

United States Court of Appeals, Federal Circuit.

May 7, 1999.

Rehearing Denied July 26, 1999.

P. David Richardson, Sidley & Austin, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Gary P. Quigley and Scott E. Erlich. Of counsel was Richard Larach.

Monica J. Palko, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant-appellee, United States. On the brief were David M. Cohen, Director, and Kirk T. Manhardt, Assistant Director, and Deborah Y. Ho, Attorney.

L. James D'Agostino, Reed Smith Shaw & McClay, LLP, of Washington, DC, argued for defendant-appellee Westfalia Separators, Inc. With him on the brief were John M. Wood, James P. Hodges, Andrew J. Hungerman IV, and Jason P. Matechak.

Before MAYER, Chief Judge, RADER and GAJARSA, Circuit Judges.

MAYER, Chief Judge.

Alfa Laval Separation, Inc. ("Alfa Laval") appeals the judgment of the Court of Federal Claims, *Alfa Laval Separation, Inc. v. United States*, 40 Fed.Cl. 215 (1998), denying injunctive relief in its post-award bid protest against the Department of the Navy ("the Navy") and Westfalia Separators, Inc. ("Westfalia"). Because Alfa Laval has demonstrated a significant, prejudicial error in the procurement process, we reverse and remand.

*Background*

Alfa Laval has been the sole-source provider of centrifugal fuel oil purifiers to the Navy for over 20 years. After a 1996 maintenance inspection, Alfa Laval informed the Navy that certain purifiers on the Navy's DD963 class destroyers were beyond repair, and offered to supply updated models for a total cost of approximately $18.9 million, at a per-unit price of approximately $350,000. This price was lower than the $387,814.67 average unit price Alfa Laval had charged the Navy in

its two most recent procurements of the purifiers. Nevertheless, the Navy decided to open the procurement to competitive bidding, issuing a Request for Proposals (RFP) that contained certain mandatory requirements with which an offeror had to comply in order to be deemed responsive. The requirements addressed shock, Type I and Type II vibration, airborne noise, and performance testing. Additionally, the RFP defined four "market acceptability criteria" to verify the offerors' experience in supplying reliable purifiers. The offeror was required to have: (1) produced the model being tendered or a generically similar model for at least ten years, (2) produced at least 300 generically similar or identical models, (3) produced at least 20 of the model being tendered, and (4) sold the item offered to the commercial market or to the government. The contract was to go to the lowest cost, technically acceptable proposal, as determined by a Navy technical evaluation panel.

Alfa Laval submitted three proposals ranging in price from $19.4 million to $23.6 million. Westfalia was the only other offeror submitting a proposal, at $13.7 million, a price about $5 million less than Alfa Laval's lowest proposal and $10 million less than Alfa Laval's highest proposal. Because Westfalia had not yet manufactured the exact purifier it proposed to supply, the evaluation panel granted Westfalia extensions under the RFP, allowing it to meet several of the testing requirements with extrapolated data from other purifiers it has manufactured. The panel lacked "a set of measurements ... demonstrating [Westfalia's] compliance with the solicitation's Type II [vibration] testing requirements." *Alfa Laval,* 40 Fed. Cl. at 232. The Navy nevertheless awarded the contract to Westfalia, and Alfa Laval filed a bid protest in the Court of Federal Claims, claiming that Westfalia's proposal did not comply with the RFP's mandatory requirements and market acceptability criteria.

After a three-day trial on the merits, the Court of Federal Claims entered judgment in favor of the government and Westfalia. The court found that the Navy violated the applicable procurement statute and regulation by awarding the contract to Westfalia, because Westfalia's proposal did not meet the Type II vibration testing requirement, but that the mistake was not sufficiently prejudicial to Alfa Laval to justify relief.

*Discussion*

■ Although we review legal conclusions of the Court of Federal Claims *de novo,* we disturb its factual findings only if they are "clearly erroneous." *See Alger v. United States,* 741 F.2d 391, 393 (Fed.Cir. 1984).

■ To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process. *See Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir.1996); *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed. Cir.1996). "To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." *Data General,* 78 F.3d at 1562 (citation omitted). Rather, the protester must show "that there was a substantial chance it would have received the contract award but for that error." *Statistica,* 102 F.3d at 1582; *see CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1574–75 (Fed.Cir.1983) (to establish competitive prejudice, protester must demonstrate that but for the alleged error, " 'there was a substantial chance that [it] would receive an award—that it was within the zone of active consideration' " (citation omitted)).

■ Westfalia and the government do not dispute that Westfalia's proposal was technically noncompliant in that it failed to comply with the Type II vibration test requirement. But this error was not insignificant. As the trial court held, "regardless of the panel's view of the appropriateness of the standard [set out in the RFP],

the Navy is strictly bound by its terms," and in waiving a portion of the standard for Westfalia, the Navy violated a clearly applicable procurement statute and regulation. 40 Fed.Cl. at 230; *see also* 10 U.S.C. § 2305(b)(1) (1994) ("The head of an agency shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the solicitation."); 48 C.F.R. § 15.606(a), (c) (1996) (requiring the government to issue a written amendment to a solicitation when it "changes, relaxes, increases, or otherwise modifies its requirements," and to provide an opportunity for competitors to submit new or amended proposals when it prefers a proposal involving "a departure from the stated requirements").

Alfa Laval contends, and we agree, that the Navy's error was prejudicial. The only bid competing with Alfa Laval was unacceptable under the standards set out in the RFP. Thus, it was error to find that Alfa Laval, the incumbent, responsible supplier, had no "substantial chance" to receive the contract award absent the Navy's error in awarding the contract to Westfalia.

The trial court based its finding "on considerations of price," noting the "colossal price difference" between Westfalia's offer ($13.7 million) and Alfa Laval's lowest priced offer ($19.4 million), as well as the difference between Alfa Laval's own sole-source proposal ($18.9 million) and the lowest bid Alfa Laval submitted in the competitive process ($19.4 million). *See* 40 Fed.Cl. at 234. The court found that these price disparities precluded a finding of prejudice, relying on *Data General* for the proposition that we have "approved the use of price differential as a factor in determining the presence of prejudice." *Id.* at 235 (citing *Data General*, 78 F.3d at 1564). But while price differential may be taken into account, it is not solely dispositive; we must consider all the surrounding circumstances in determining whether there was a substantial chance that a protester would have received an award but

for a significant error in the procurement process. In issuing the RFP here, the government sought proposals that met certain requirements. Alfa Laval, an irrefutably competent supplier, submitted the only bid meeting all of the government's requirements, at a lower per-unit price than it had charged for the same purifiers in two recent procurements: it must have had a substantial chance to receive the contract award.

Westfalia's contention that Alfa Laval's own offer did not meet the requirements of the solicitation and therefore was not eligible for award is meritless. The trial court found that "[h]ad the evaluators correctly analyzed the data," they would have found Alfa Laval's proposal "irrefutably compliant." 40 Fed.Cl. at 234. We see no error in that finding.

Finally, appellees' suggestion that Alfa Laval was required to put on evidence demonstrating that Westfalia's lack of Type II vibration data accounted for the price differential between its offer and Westfalia's has no basis in law. A protester demonstrates prejudice by showing "that there was a substantial chance it would have received the contract award" if the government had not violated the law. *Statistica*, 102 F.3d at 1582. We decline to increase this burden.

### Conclusion

Accordingly, the judgment of the Court of Federal Claims is reversed, and the case is remanded for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*